**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MARK SARGENT, et al., | : | |
| Plaintiffs, | : | CIVIL ACTION NO. |
| | : | 3:14-CV-352 (JCH) |
| v. | : | |
| | : | |
| TOWN OF WESTPORT, et al., | : | SEPTEMBER 19, 2017 |
| Defendants. | : | |

**RULING RE: MOTIONS FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 2

II.   FACTS ............................................................................................................... 3

III.  LEGAL STANDARD ......................................................................................... 7

IV.  DISCUSSION ................................................................................................... 8

   A.  Westport Defendants ................................................................................. 9

     1. Fourth Amendment and False Arrest Claims ..................................... 10

     2. Equal Protection Claims ..................................................................... 19

     3. Substantive Due Process ................................................................... 23

     4. Unreasonable Search ......................................................................... 27

     5. Failure to Report ................................................................................ 30

     6. Municipal Liability .............................................................................. 32

   B.  The Lawyer Defendants ......................................................................... 32

V.   CONCLUSION ............................................................................................... 36

## I.    INTRODUCTION

Plaintiff Mark Sargent ("Sargent"), and his minor children, plaintiffs John Doe One, John Doe Two, and Jane Doe (collectively, the "plaintiffs"), sued the defendants, the Town of Westport (the "Town"); Westport police officers Ryan Paulsson, Thomas Casimiro III, Frank Masi, Sean Kelley, John Lachioma, Wilgins Altera, John Cabral, Ashley DelVecchio, and Richard Bagley, in their individual capacities (collectively, the "Westport Police defendants"); the law firm Rutkin, Oldham & Griffin, LLC, David Griffin, Sarah Oldham, and Alexander Cuda (collectively, the "Rutkin defendants"); and the Law Offices of Mark Sherman, LLC and Mark Sherman, Esq. (collectively, the "Sherman defendants").  The allegations in the suit stem from a series of incidents that occurred around the time that Sargent filed for divorce against his ex-wife, Pamela Stautberg-Moffett ("Stautberg-Moffett), on March 31, 2011, in which Westport police officers responded to calls made by Sargent and Stautberg-Moffett regarding incidents surrounding their divorce.  The Sherman defendants represented Stautberg-Moffett in connection with criminal charges against Sargent that stemmed from those calls, and the Rutkin defendants represented Stautberg-Moffett in the divorce.  The plaintiffs allege that both the Rutkin defendants and the Sherman defendants (collectively, the "lawyer defendants") intentionally inflicted emotional distress upon them through their representation of Stautberg-Moffett.

On April 1, 2015, Sargent filed a Second Amended Complaint, which various defendants moved to dismiss.  See 2d Am. Compl. (Doc. No. 67); Mots. to Dismiss (Doc. Nos. 74–75, 77–78).  On October 16, 2015, the court ruled on those Motions, dismissing the claims against Stautberg-Moffett, the claims against three additional

officers, and all claims except intentional infliction of emotional distress against the Rutkin defendants and the Sherman defendants. <u>See</u> Ruling re Mots. to Dismiss 2d Am. Compl. (Doc. No. 87). The remaining defendants have now moved for summary judgment. <u>See</u> Mots. for Summ. J. (Doc. Nos. 220–222). The plaintiffs have opposed the Motions, <u>see</u> Pls.' Opps. to Mots. for Summ. J. (Doc. Nos. 230–232), the defendants have replied, <u>see</u> Replies to Opps. (Doc. Nos. 235–237) and the issues presented therein are ripe for decision.

## II.    FACTS

The following facts are drawn from the parties' Local Rule 56 statements and are generally admitted by all relevant parties. Material facts in dispute will be discussed at a later point in the Ruling.

The plaintiffs were residents of the Town at all relevant times. <u>See</u> Westport Defs.' Local Rule 56(a)1 Statement ("Westport 56(a)1 Stmt.") (Doc. No. 220-2) ¶¶ 1–2; Local Rule 56(a)2 Statement in Opp. to Westport Summ. J. Mot. ("Pls.' Westport Rule 56(a)2 Stmt.") (Doc. No. 230-1) ¶¶ 1–2.

On March 22, 2011, Sargent had a verbal argument with his mother-in-law while the children were present in the home. <u>See</u> Westport 56(a)1 Stmt. ¶¶ 8–9; Pls.' Westport Rule 56(a)2 Stmt. ¶¶ 8–9. Stautberg-Moffett called the Westport Police department, who dispatched Officer Paulsson. <u>See</u> Westport 56(a)1 Stmt. ¶ 7; Pls.' Westport Rule 56(a)2 Stmt. ¶ 7. No one was arrested nor were any summons issued on March 22, 2011. <u>See</u> Westport 56(a)1 Stmt. ¶ 10; Pls.' Westport Rule 56(a)2 Stmt. ¶ 10 (arguing that the April arrests are related to this event, but without denying that no arrests were made or summons issued on March 22). Sargent filed for divorce from his

3

wife shortly thereafter in March 2011.  <u>See</u> Westport 56(a)1 Stmt. ¶ 6; Pls.' Westport Rule 56(a)2 Stmt. ¶ 6.

Stautberg-Moffett hired the Rutkin defendants to represent her in her divorce shortly after the first call to the police was made.  <u>See</u> Local Rule 56(a)1 Statement of Rutkin Defs. ("Rutkin 56(a)1 Stmt.") (Doc. No. 222-2) ¶ 13; Local Rule 56(a)2 Statement in Opp. to Rutkin Defs.' Summ. J. Mot. ("Pls.' Rutkin 56(a)2 Stmt.") (Doc. No. 231-1) ¶ 13.

On April 1, 2011, Officer Casimiro arrived to the marital home in response to a complaint made by Stautberg-Moffett.  <u>See</u> Westport 56(a)1 Stmt. ¶ 12 (citing the 2d Am. Compl.); Pls.' Westport Rule 56(a)2 Stmt. ¶ 12 (denying that the record states who called the officer, but without addressing the allegation in the 2d Am. Compl.).  Although the parties dispute the specifics, there is agreement about some aspects of the events of April 1.  Stautberg-Moffett was in the bathroom of the guest bedroom with a journal that both she and Sargent believed that they owned, at least in part, and the door from the hall to the guest bedroom was locked behind her.  <u>See</u> Westport 56(a)1 Stmt. ¶¶ 13, 14–15; Pls.' Westport Rule 56(a)2 Stmt. ¶¶ 13, 14–15.  Ultimately, Sargent gained access to the bedroom.  <u>See</u> Westport 56(a)1 Stmt. ¶ 16; Pls.' Westport Rule 56(a)2 Stmt. ¶ 16.  The police report indicates that Stautberg-Moffett told Casimiro that Sargent attempted to shoulder the door open.  <u>See</u> Westport 56(a)1 Stmt. ¶ 14; Pls.' Westport Rule 56(a)2 Stmt. ¶ 14 (denying the statements as hearsay, but without addressing Federal Rule of Evidence 803(6), the exception for records of a regularly conducted activity).  Sargent was given a misdemeanor summons for disorderly conduct, and

Casimiro contacted the Department of Children and Families ("DCF"). See Westport 56(a)1 Stmt. ¶¶ 18, 20; Pls.' Westport Rule 56(a)2 Stmt. ¶¶ 18, 20.

On April 4, 2011, the Sherman defendants began their representation of Stautberg-Moffett. See Sherman Defs.' Local Rule 56(a)1 Statement ("Sherman Rule 56(a)1 Stmt.") (Doc. No. 221-2) ¶ 24; Local Rule 56(a)2 Statement in Opp. to Sherman Defs.' Summ. J. Mot. ("Pls.' Sherman Rule 56(a)2 Stmt.") (Doc. No. 232-1) ¶ 24 (denying the statement on the basis that the plaintiffs do not know when the firm began to represent Stautberg-Moffett, which is insufficient to undermine the evidence in support of the date). On that day, a criminal protective order was entered against Sargent. See Westport 56(a)1 Stmt. ¶ 21; Pls.' Westport Rule 56(a)2 Stmt. ¶ 21.

On April 8, Stautberg-Moffett appeared at the Westport Police station to report that she was scared and intimidated by Sargent's behavior, but no charges were brought as a result of this complaint. See Westport 56(a)1 Stmt. ¶ 22; Pls.' Westport Rule 56(a)2 Stmt. at ¶ 22; Sherman Rule 56(a)1 Stmt. ¶¶ 32, 34; Pls.' Sherman Rule 56(a)2 Stmt. ¶¶ 32, 34 (contesting the accuracy of the facts underlying the report, but not her statements regarding her feelings).

On April 9, 2011, Stautberg-Moffett called the police because she was locked out of the master bedroom. See Westport 56(a)1 Stmt. ¶¶ 24–25; Pls.' Westport Rule 56(a)2 Stmt. ¶¶ 24–25. After asking Stautberg-Moffett a few questions, the dispatcher decided to send an officer to the house. See Westport 56(a)1 Stmt. ¶ 27; Pls.' Westport Rule 56(a)2 Stmt. ¶ 27. Officer Kelley arrived at the marital home and woke Sargent, who was sleeping in the bedroom, to speak with him. Westport 56(a)1 Stmt. ¶ 29; Pls.' Westport Rule 56(a)2 Stmt. ¶ 29. No arrests were made on April 9, 2011. See

Westport 56(a)1 Stmt. ¶ 33; Pls.' Westport Rule 56(a)2 Stmt. ¶ 33 (arguing that these events played into his later arrest, but not disputing the fact he was not arrested the evening of the 9th).

On April 10, 2011, Sargent called the police to report thefts by his wife, and explained that he was in the middle of a contentious divorce, that he was subject to a restraining order, and that the situation was extremely volatile. See Westport 56(a)1 Stmt. ¶¶ 34–35; Pls.' Westport Rule 56(a)2 Stmt. ¶¶ 34–35. The police were then called by Stautberg-Moffett, and she reported that Sargent was pulling on her. See Westport 56(a)1 Stmt. ¶ 36; Pls.' Westport Rule 56(a)2 Stmt. ¶ 36 (Sargent contends that he called the police again as well, but does not dispute that Stautberg-Moffett called). Officer Altera placed Sargent under arrest for disorderly conduct and violating the protective order, and made a report to DCF. See Westport 56(a)1 Stmt. ¶¶ 40–41; Pls.' Westport Rule 56(a)2 Stmt. ¶¶ 40–41.

On three later occasions, Stautberg-Moffett made complaints to the Westport Police regarding her belief that Sargent had violated court orders or suspicious noises in the house, and Officers Cabral, DelVecchio, and Bagley responded those calls. See Westport 56(a)1 Stmt. ¶ 42; Pls.' Westport Rule 56(a)2 Stmt. ¶ 42. None of these calls resulted in an arrest. See Westport 56(a)1 Stmt. ¶ 43; Pls.' Westport Rule 56(a)2 Stmt. ¶ 43.

The Sherman defendants accompanied Stautberg-Moffett to the Westport police station on May 1, 2011. See Sherman Rule 56(a)1 Stmt. ¶¶ 47; Pls.' Sherman Rule 56(a)2 Stmt. ¶¶ 47. This visit resulted in the creation of a police report which noted that Stautberg-Moffett had received a voicemail from a neighbor in which Sargent can be

heard in the background telling the neighbor what to say. See Sherman Rule 56(a)1 Stmt. ¶¶ 49; Pls.' Sherman Rule 56(a)2 Stmt. ¶¶ 49. The Rutkin defendants followed up on this voicemail by sending a letter to Sargent's attorneys expressing their belief that it was inappropriate for Sargent to communicate with Stautberg-Moffett with a third party, and that they believed it violated the court orders. See Rutkin 56(a)1 Stmt. ¶ 54; Pls.' Rutkin 56(a)2 Stmt. ¶ 54. This led to the Rutkin defendants being unwilling to continue transferring items between the parties until they were assured that Sargent would behave in conformity with their expectations. See Rutkin 56(a)1 Stmt. ¶ 55; Pls.' Rutkin 56(a)2 Stmt. ¶ 55.

Ultimately, in July 2011, Stautberg-Moffett communicated her desire that the charges against Sargent be dismissed to the prosecutor, and on August 17, 2011, a judge of the Superior Court dismissed the pending criminal charges. See Westport 56(a)1 Stmt. ¶¶ 44, 47; Pls.' Westport Rule 56(a)2 Stmt. ¶¶ 44, 47.

## III.    LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant motions for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the burden of establishing the absence of any genuine issue of material fact." Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010). Once the moving party has satisfied that burden, to defeat the motion "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). When considering summary

judgment on an issue that the non-movant ultimately bears the burden of proof, the movant only need point to the lack of evidence in support of the claim, to require that the non-movant demonstrate that every essential element of the claim could be found to exist by a reasonable jury. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–323 (1986).

"For summary judgment purposes, a 'genuine issue' exists where the evidence is such that a reasonable jury could decide in the non-moving party's favor." Cambridge Realty Co., LLC v. St. Paul Fire & Marine Ins. Co., 421 F. App'x 52, 53 (2d Cir. 2011); see also, Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that the non-moving party must demonstrate more than a mere "scintilla" of evidence in its favor). "[U]nsupported allegations do not create a material issue of fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) ("The time has come, as James and Hazard put it, 'to put up or shut up.'") (citing James & Hazard, Civil Procedure 150 (2d ed. 1977). The court must resolve all ambiguities and draw all inferences in favor of the non-movant. See Garcia v. Hartford Police Dep't, 706 F.3d 120, 127 (2d Cir. 2013).

## IV. DISCUSSION

All of the remaining defendants have moved for summary judgments as to the claims against them. The court will proceed to first consider the Westport Police defendants and the Town's Motion, see Mot. for Summ. J. (Doc. NO. 220), then consider the lawyer defendants' Motions, see Mot. for Summ. J. (Doc. No. 221); Mot. for Summ. J. (Doc. No. 222).

At the outset, the court must address the method by which the plaintiffs presented their oppositions. The plaintiffs' opposition memoranda included many

sections without any citation at all, see e.g., Pls.' Opp. to Westport Defs.' Mot. for

Summ. J. ("Westport MFSJ Opp.") (Doc. No. 230) at 10–13, many sections which cited

to a paragraph "et seq." within 111-page, 313 paragraph affidavit, see e.g., id. at 13

(citing to "Sargent Affidavit ¶ 35 et seq.").  Additionally, the Sargent Affidavit contained a

mix of admissible and inadmissible statements, some of which Sargent may have

personal knowledge, but many of which are rank hearsay, and others which are

unsupported speculation or his conclusions. See e.g., Sargent Aff. (Doc. No. 231-4) ¶

18 (documenting his memory of awaiting the arrival of the police on March 22), ¶ 153

(including that Sargent remembers an unidentified neighbor informing him that her

brother had been subjected to Divorce by 911 tactics, which, depending on the reason it

is offered, could constitute hearsay), ¶ 166 (stating that he did not know who gave the

court the address for the protective order before speculating that the lawyer defendants

must have instructed Stautberg-Moffett to use the marital address).  This method of

filing is not useful to the court and does not constitute proper representation by counsel,

even in a case such as this where Sargent has filed the papers himself.[1]

A.     Westport Defendants

The Second Amended Complaint alleges false arrest, unreasonable seizures,

denial of equal protection under the Fourth and Fourteenth Amendments to the United

States Constitution, and failure to report abuse or neglect of children against the

---

[1] If counsel for the plaintiffs intends to continue practicing in this district, counsel must familiarize himself with the Local Rules and the Federal Rules of Civil Procedure.  See D. Conn. L. Civ. R. 7(a)3 ("Nothing in this Rule shall require the Court to review portions of the record in response to a motion where the moving and opposition papers do not make specific reference to such portions of the record.); Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support oppose a motion must be made on personal knowledge [and] set out facts that would be admissible in evidence . . . .").

Westport Police Officers.  See 2d Am. Compl. at 1.  The Second Amended Complaint also alleges that the Town had unlawful policies and municipal practice.  See id.  The Town and the Westport Police defendants now move for summary judgment on all claims.  See Mem. of Law in Supp. of Mot. for Summ. J. ("Westport MFSJ Mem.") (Doc. No. 220-1).

### 1.    Fourth Amendment and False Arrest Claims

The Second Amended Complaint does not specify whether the cause of action for false arrest advanced by Sargent is under 42 U.S.C. § 1983 or state law.  See 2d Am. Compl. at 1.  The response to the Motion for Summary Judgment as to the "Fourth Amendment violations and wrongful arrests" contains no citations to statutes or case law from which the court could determine what law the plaintiffs seeks to proceed under.  See Westport MFSJ Opp. at 8–22.  However, courts in the Second Circuit look to the law of the state in which the arrest occurred to determine whether or not there has been a false arrest, and therefore the court's analysis will proceed under Connecticut law.  See Atkinson v. Rinaldi, Case No. 15-cv-913 (DJS), 2016 WL 7234087, at *6 (D. Conn. Dec. 14, 2016) (citing Russo v. City of Bridgeport, 479 F.3d 196, 203 (2d Cir. 2007)).

"False imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another."  Nodoushani v. S. Conn. State Univ., 152 Conn. App. 84, 92 (2014).  The existence of probable cause constitutes justification and as such is a complete defense to an action for false arrest, whether brought under state law or under section 1983 of title 42 of the United States Code.  See Venghaus v. City of Hartford, Case No. 3:06-Cv-1452 (DJS), 2012 WL 1050014, at *3 (D. Conn. Mar. 27, 2012) (citing Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)).  An officer has probable cause for an arrest when he has "knowledge or reasonably trustworthy information sufficient to

warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006). Probable cause should be determined by reference to all of the "facts available to the officer at the time of the arrest and immediately before it." Id.

### a. Officers not involved in issuing summons or making an arrest

The Westport Police defendants first argue that there are only two incidents which could plausibly lead to a claim for false arrest, the issuance of a misdemeanor summons for Sargent on April 1 and the arrest of Sargent on April 10, 2011. Westport MFSJ Mem. at 10. The plaintiffs disagree, stating their belief that Officer Paulsson violated Sargent's rights on March 22 by requiring him to sit in one place during the officers' investigation, and that all of the acts of officers Paulsson, Kelley, Casimiro, Smith (who is not a defendant), Altera, Masi, and the Town cumulatively violated the plaintiffs' constitutional rights. See Westport MFSJ Opp. at 20–23 ("[a]t some point surely such calls and contacts violate a citizens' constitutional rights."). The plaintiffs cite to no authority for the proposition that multiple contacts by different police officers constitutes a constitutional violation, and the court declines to consider this argument without any authority cited in support. Likewise, the plaintiffs cite no authority for the proposition that being told to sit on a table by an officer investigating a 911 call regarding domestic violence constitutes false arrest. See id. Because the plaintiffs point to no authority to support the plaintiffs' contention that being instructed to sit in one place, without being physically restrained, constitutes false arrest, Kelley is entitled to Summary Judgment as to this claim. See Berry v. Loiseau, 223 Conn. 786, 820 (1992) (explaining that this claim requires proof that the restraint was against the will of the

person restrained, and that the person restrained did not consent or acquiesce to it); see, e.g., Pistorio v. Fleagane Enterp., Inc., No. CV000504270, 2001 WL 527524, at *3 (Conn. Super. Ct. April 24, 2001) (striking a claim for false arrest based on a theory of constructive seizure due to the presence of numerous officers and statement of intent to arrest).

Therefore, the Motion for Summary Judgment of Officers Paulsson, Masi, Lachioma, Cabral, DelVecchio, and Bagley as to the false arrest and unreasonable seizure claims is granted.

b.    Officers Kelley and Casimiro

On April 1, 2011, Officer Kelley and Officer Casimiro, along with other officers not named in the Second Amended Complaint, responded to a call for a domestic disturbance. See Casimiro Aff., Ex. A (Doc. No. 220-5). The police report includes that Stautberg-Moffett told the officers that Sargent attempted to "shoulder" the door open. Id. As a result, Sargent was issued a misdemeanor summons for disorderly conduct. See Westport 56(a)1 Stmt. ¶ 18; Pls.' Westport Rule 56(a)2 Stmt. ¶ 18. The Second Circuit has held that "the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure." Burg v. Gosselin, 591 F.3d 95, 98 (2d Cir. 2010). Thus, to the extent that the plaintiffs are proceeding on a federal claim against Officers Kelley and Casimiro as to the events of April 1, that claim is precluded by Second Circuit law.

The plaintiffs argue, again without citation or authority and ignoring the fact that no malicious prosecution claim was included in the Second Amended Complaint, that "[f]or purposes of state wrongful arrest law and malicious prosecution, issuing Mr. Sargent the summons constitutes a wrongful arrest. . . ." See Pls.' Westport 56(a)2

Stmt. at 13.  The plaintiffs offer no evidence to support their claim for false arrest under

state law, which requires the plaintiff to "prove that his physical liberty has been

restrained by the defendant and that the restraint was against his will, that is, that he did

not consent to the restraint or acquiesce in it willingly."  See <u>Lo Sacco v. Young</u>, 20

Conn. App. 6, 19 (1989).  The plaintiffs argue that they believe Sargent was wrongfully

charged with disorderly conduct because they do not believe Sargent had the relevant

mental state, <u>see</u> Westport MFSJ Opp. at 13–14, but offer no evidence on which a jury

could find that his physical liberty had been restrained or confined through the exercise

of force.  See <u>Berry</u>, 223 Conn. at 820 (1992) (noting that a proper definition of false

imprisonment includes the express or implied exercise of force).

Because the plaintiffs have not come forward with evidence upon which a

reasonable jury could find that Sargent's physical liberty had been restrained through

the express or implied use of force, Sargent cannot demonstrate that he was subjected

to common-law false imprisonment.  Therefore, the Motion for Summary Judgment by

Officers Kelley or Casimiro as to any false arrest claim arising from the events of April 1

is granted.

c.    <u>Officers Altera and Woods</u>

Finally, the plaintiffs allege that Officers Altera and Woods did not have probable

cause to arrest Sargent on April 10, when Sargent was arrested for disorderly conduct.

<u>See</u> Westport MFSJ Opp. at 9.  They allege that the officers had notice of Stautberg-

Moffett's lack of trustworthiness because the Westport police had been called to the

couple's home multiple times before.  <u>See</u> <u>id.</u> at 9–10.  Their conclusions about the

police's perspective are not relevant—what is relevant is whether there were facts

available to the officers themselves which constituted probable cause to arrest Sargent on April 10. See Weyant, 101 F.3d at 852.

Officer Altera arrested Sargent after being called to the marital house in connection with an argument. The specific facts of the evening are contested, but there is less dispute with regard to what the officers were told happened. Stautberg-Moffett called 911 and reported that her husband had "pulled" her. See Altera Aff., Ex. A (Doc No. 220-7). Once there, Altera was told by Stautberg-Moffett that Sargent had pulled her, and Altera was aware that Sargent was subject to a protective order. See id.; Sargent Aff. ¶¶ 133–134 (including a statement that Sargent could hear that the officers were very interested in Stautberg-Moffett's claim that Sargent had pulled her). A police officer may rely upon statements by a person who claims to be a victim in making a probable cause determination. See Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000). No reasonable jury looking at this evidence alone could conclude that the officers responding on April 10 were without probable cause to arrest, and therefore could not rule in the plaintiffs' favor on their claim of false arrest. In determining the Motion for Summary Judgment, however, the court must look to all of the facts and allegations and determine whether the facts, in the light most favorable to the plaintiffs, could support a finding that there was not probable cause.

The plaintiffs offer Sargent's own recollection of the events of April 10, which they claim creates a genuine issue of material fact. See Westport MFSJ Opp. at 8-13. Again, without citing specific paragraphs in Sargent's Affidavit nor any law, they argue that the officers should have known that Stautberg-Moffett was untrustworthy, and that the officers should have credited Sargent's statements instead. See id. at 10. They

claim that the photographs of Stautberg-Moffett's arm fail to show any injury, that Sargent believes that the police had to take multiple photographs and deleted photographs which did not support arresting Sargent.  See id. at 11.  Finally, they claim that the officers manufactured a statement from Stautberg-Moffett, which is time-stamped an hour after the other time-stamps in the police report.  See id. at 12.  Although the plaintiffs do not cite to Sargent's Affidavit nor any other source in this section of their Memorandum, the court has taken it upon itself to attempt to determine whether there is additional admissible evidence upon which a jury could reasonably rule in favor of the plaintiffs on this issue.

Sargent's Affidavit mixes admissible statements regarding his memory of the events with inadmissible opinions and conclusions without any basis of personal knowledge.  For example, he admits that he has no idea what Stautberg-Moffett was doing during the day of April 10, but that doesn't prevent him from speculating with near certainty as to what she was doing.  See Sargent Aff. ¶ 123 ("The mother was absent from the marital residence for the entire day on April 10, 2011.  I have no idea where she was at the time.  Given what I know now, she was almost certainly in her apartment, which I now know was her true residence.").  Sargent offers no basis to suggest that he has personal knowledge of what Stautberg-Moffett was doing, and therefore his speculation regarding Stautberg-Moffett's activities that day is inadmissible.  See Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); Fed. R. Evid. 602.  Ultimately, the events of that evening boil down

to a "he-said, she-said," where the officers were told by Stautberg-Moffett that she had been pulled by Sargent across the foyer, and Sargent denied the accusation, instead accusing Stautberg-Moffett of stealing his camera.  See Altera Aff., Ex. A (Doc. No. 220-7) at 5; Sargent Aff. ¶¶ 135–136.  The question before the court—and which could ultimately be before the jury—is not which narrative is true, but whether, looking to the totality of the circumstances the police were aware of, there existed probable cause to arrest Sargent.  See Panetta, 460 F.3d at 395.

Those circumstances can be summarized as follows: the police were aware of the Protective Order (as demonstrated by the fact that Sargent was charged with violating the Order); the police were informed by Stautberg-Moffett that Sargent had pulled on Stautberg-Moffett; Sargent denied the accusations, instead accusing Stautberg-Moffett of theft; and the police reported that they saw redness on Stautberg-Moffett's arm.  See Altera Aff., Ex. A at 5.  These circumstances, absent reasons to doubt the veracity of Stautberg-Moffett, demonstrate that the officers had probable cause to arrest Sargent.  See Stansbury v. Wertman, 721 F.3d 84, 90 (2d Cir. 2013) ("absent circumstances that raise doubts as to the victim's veracity, a victim's identification is typically sufficient to provide probable cause.").  Here, the police were provided with a victim's identification of her alleged attacker and a description of that attack in a sworn statement, they reported that they saw redness consistent with that attack, and were aware that a Protective Order had been issued to protect Stautberg-Moffett from Sargent.  Taken together, the officers had a reasonable basis upon which to charge Sargent with violation of that Order, so long as there was no reason to doubt the veracity of Stautberg-Moffett.

The plaintiffs argue that the officers should have known that Stautberg-Moffett was not trustworthy because "[t]he undisputed facts demonstrate that Mr. Sargent repeatedly sought to avoid [Stautberg-Moffett], who continued to follow him and harass him," but unsupported statements do not control the outcome of this motion. See Westport MFSJ Opp. at 10. They state that it "would make no sense for Mr. Sargent to commit a crime while he knew the police were en route to his home[,]" that the officers refused to consider Sargent's claim that Stautberg-Moffett was trying to expel him from the house improperly as part of their divorce, and that the officers refused to consider that Stautberg-Moffett was suffering from serious mental illness. See id. at 10-11. Finally, they argue that the photographs of Stautberg-Moffett's arm "contradict the view of events reflected in their police report," and any "redness was more likely due to the manipulation of [Stautberg-Moffett's] arm by the officers than any physical contact with Mr. Sargent." See id. at 11.

The plaintiffs' arguments are not persuasive. The Second Circuit has noted that "an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." Panetta, 460 F.3d at 395-96. Sargent's suggestion that he would not have committed a crime while the officers were on their way does not inform whether the officers were persuaded by Stautberg-Moffett that, during a contentious divorce and argument occurring therein, Sargent resorted to physical contact. Further, the photographs, while not showing extreme trauma or broken skin, do show some indication of redness and surely do not "contradict" the police report. See Altera Aff., Ex. C. The plaintiffs have no basis for their statement that the redness was due to manipulation of Stautberg-Moffett's arm by the officers. Finally, the plaintiffs'

contention that the officers refused to consider that Stautberg-Moffett was suffering from mental illness or review recordings he had of the incident does not change the court's probable cause determination—once the officers believed that probable cause existed to arrest Sargent, they were not required to prove that Sargent's version of events did not happen, nor does it matter that a more thorough investigation might have cast doubt on their basis for that arrest. See Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001).

Sargent also attempts to cast doubt on Stautberg-Moffett's sworn statement because the timestamp on the sworn statement is 22:00, while the body of the police report indicates that the incident was reported at 21:09. See Westport MFSJ Opp. at 12. Again, this minor detail creates no genuine issue of material fact. This 51 minute discrepancy is not inconsistent with the hectic nature of the scene of a domestic disturbance and arrest and does not, without more, support the inference that Stautberg-Moffett's Affidavit was procured after the fact to manufacture probable cause to justify an unlawful arrest.

Finally, even were the court incorrect as to the merits of this issue, the Westport defendants would be entitled to qualified immunity as to the false arrest claims. Qualified immunity serves to immunize government officials from claims arising from official conduct when that "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Buckley v. Fitzsimmons, 509 U.S. 259, 268 (1993). "[I]f it is objectively reasonable for an official to believe that he or she is acting within constitutional and statutory bounds, the official will be insulated from liability stemming from his or her conduct." Natale v. Town of

18

Ridgefield, 927 F.2d 101, 104–05 (2d Cir. 1991).  In the context of claims of false arrest, the doctrine of qualified immunity immunizes officers from claims "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  Posr v. Court Officer Shield #207, 180 F.3d 409, 416 (2d Cir. 1999).  The unrebutted evidence cited above and which the court has concluded supports the officers' defense based on probable cause, apply with greater strength under the relevant test for qualified immunity.

Because the plaintiffs have failed to come forward with admissible evidence upon which a reasonable jury could rule in their favor on this issue, or alternatively, the Westport Police defendants are entitled to qualified immunity, the Westport Police defendants' Motion for Summary Judgment as to all of the plaintiffs' claims for false arrest or warrantless seizures in violation of the Fourth Amendment is **GRANTED**.

        2.        Equal Protection Claims

The Westport Police defendants also move for summary judgment as to any equal protection theory advanced in the Second Amended Complaint, which like the false arrest, is not tied to any specific acts.  See 2d Am. Compl.  In opposition, the plaintiffs clarify that they are bringing claims based both on gender discrimination and class-of-one discrimination.  See Westport MFSJ Opp. at 22.   The court will consider both theories.

        a.        Intentional Gender Discrimination

In order to violate the Equal Protection Clause, the plaintiffs must demonstrate that discriminatory intent was a motivating factor.  See Okin v. Vill. of Cornwall-on-Hudson Police Dept., 577 F.3d 415, 438 (2d Cir. 2009).  The plaintiffs allege that the

Westport Police defendants intentionally discriminated against Sargent because of his gender. See id. at 26–29. The argument appears to be that the Westport police arrested Sargent (a man), but not Stautberg-Moffett (a woman), and Sargent claims that the officers made gender-discriminatory statements. From this they conclude that his right to equal protection under the law was violated. See id. (describing the various police visits and certain statements Sargent recalls the officers making in which he felt they demonstrated gender animus) (citing Sargent Aff. ¶¶ 24, 41, 90).

Viewing the evidence in the light most favorable to the plaintiffs, the court cannot conclude that there is evidence sufficient for a jury to find that the police were acting with an intent to discriminate against Sargent on the basis of his gender. The plaintiffs direct the court to one statement by Officer Paulsson on March 22, in which Sargent states that Paulsson cut off Sargent's explanation that Sargent was the children's primary care provider, saying "she is their mother." See Sargent Aff. ¶ 24. This statement does not support the inference that Sargent was being treated differently because Stautberg-Moffett was a woman, but rather appears to be a statement of fact. It is also not clear how Stautberg-Moffett was treated differently, other than that she was the individual who had called the police and therefore the police investigated her claims. Indeed, neither of them were arrested that evening.

The plaintiffs next cite to an officer's inquiry about why Sargent was not at work. See Westport MFSJ Opp. at 28 (citing Sargent Aff. at ¶ 41). The question of why an adult was not at work does not demonstrate gender-driven animus, and it is only Sargent's interpretation which links this question to his gender. See Sargent Aff. ¶ 41 ("They did not seem to believe that fathers could be primary caregivers to children.").

The plaintiffs also points to the fact a police officer (not named in this suit) had not allowed Sargent to talk when that officer called him to tell him to not harass Stautberg-Moffett.  See id. ¶ 90.  Again, there is nothing about this interaction that suggests that the officer's treatment of Sargent was motivated by Sargent's gender, but rather the nature of Stautberg-Moffett's allegations against him.  Finally, the plaintiffs allege that, when another officer not named in the suit hung up on Sargent in connection with Stautberg-Moffett's report of an intruder, it demonstrated gender-driven animus, without explanation why.

Essentially, the plaintiffs' theory would require a jury to take these four discrete comments or acts, made by four different officers and not including any reference to gender, and conclude that the Westport Police defendants intentionally discriminated against Sargent on the basis of his gender.  No reasonable jury could draw such an inference.  See Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (requiring the non-moving party to cite to more than a scintilla of evidence in favor of their theory).

Therefore, the Westport Police defendants are entitled to summary judgment as to the claims of intentional gender discrimination.

> b.    Class-of-One

The plaintiffs are also advancing a theory that the Westport Police defendants violated Sargent's right to Equal Protection under a "class-of one" theory.  See Westport MFSJ Opp. at 29–30.  "The Equal Protection Clause requires that the government treat all similarly situated people alike."  Garanin v. New York City Hous. Pres. and Dev., 673 F. App'x 122, 124 (2d Cir. 2016) (citing Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001)).  "A class-of-one claim exists where the plaintiff alleges that

she has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." <u>Analytical Diagnostic Labs, Inc. v. Kusel</u>, 626 F.3d 135, 140 (2d Cir. 2010) (internal citations omitted).  In order to succeed on their class-of-one claim, the plaintiffs must be able to show that: "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." <u>Ruston v. Town Bd. for Town of Skaneateles</u>, 610 F.3d 55, 59 (2d Cir. 2010).

Here, the question is whether the plaintiffs have come forward with evidence on which a reasonable jury could base a finding that no rational person could regard the circumstances of Sargent and those of Stautberg-Moffet—the only comparator he offers—to be dissimilar enough to justify a difference in their treatments.  <u>See</u> Westport MFSJ Opp. at 29.  The plaintiffs do not offer any argument as to how the two of them were the same, other than through conclusory statements.  <u>See, e.g.</u>, <u>id.</u> at 30 ("The Westport Defendants applied these principles very differently to [Stautberg-Moffett] and Mr. Sargent, even though they were similarly situated.").  The court cannot conclude that a reasonable jury could find that the situations of Stautberg-Moffett and Sargent were similar—she, a woman who had called the police numerous times to complain that her husband was threatening her and he, the alleged harasser who was subject to a protective order; she, the individual who called the police in most instances alleging that

she feared for her safety and he, the individual who was the subject of her calls and in the instances where he called, not alleging that he feared for his safety.

Finally, even were the court not persuaded that the Westport defendants are entitled to summary judgment on the merits, it would grant them summary judgment based on their assertion of qualified immunity.  As with the claims of false arrest, the question is whether, even if they violated Sargent's constitutional rights, it was objectively reasonable for them to think their actions did not violate his clearly established rights.  See Messerchmidt v. Millender, 565 U.S. 535, 546 (2012) (discussing qualified immunity which protects "all but the plainly incompetent or those who knowingly violate the law"); Natale, 927 F.2d at 104–105 ("Essentially, if it is objectively reasonable for an official to believe that he or she is acting within constitutional and statutory bounds, the official will be insulated from liability stemming from his or her conduct.").  The same evidence which supports the court's determination of this claims on the merits would support a finding that the officers are insulated from these claims under the doctrine of qualified immunity.

Because the plaintiffs have failed to come forward with evidence upon which a reasonable jury could find that no rational person could conclude that these two individuals were dissimilar enough to justify the difference in the way they were treated, and alternatively, the officers are entitled to qualified immunity, the Westport Police defendants' Motion for Summary Judgment as to the Equal Protection Claim is **GRANTED**.

      3.    Substantive Due Process

Officers Paulsson, Masi, Lachioma, Cabral, DelVecchio, and Bagley move for summary judgment as to any possible claims of substantive due process violations

asserted against them in the Second Amended Complaint.  See Westport MFSJ Mem. at 31–38.  The court notes that the officers are correct: the Second Amended Complaint does not clearly state a claim of substantive due process.  See Westport MFSJ Mem. at 31.  However, as the parties have briefed the issue, see Westport MFSJ Mem. at 31–38; Westport MFSJ Opp. at 30–36, the court will address whether the record would support any such claim made by the plaintiffs against these defendants.

The plaintiffs argue that the Westport Police defendants and the Town's actions allowed Stautberg-Moffett to use her attorneys to harm the plaintiffs, and therefore constituted a state-created danger.  See Westport MFSJ Opp. at 30-36.  The court notes that, although the Motion appears to be made only by Officers Paulsson, Masi, Lachioma, Cabral, DelVecchio, and Bagley, the plaintiffs' response references all of the Westport police defendants.  See Westport MFSJ Opp. at 35 (referencing the "Westport Defendants" without indicating any specific officer that the comments relate to).  The court will therefore consider whether the plaintiffs have come forward with evidence which creates a genuine issue of material fact as to a substantive due process claim against any of the police defendants.

Under the state-created danger doctrine, state actors may be found liable for acts of private violence if there are facts that show "that the officers in some way had assisted in creating or increasing the danger to the victim," which would constitute a violation of the victim's rights provided by the Due Process clause.  See Dwares v. City of New York, 985 F.2d 94, 99 (2d Cir. 1993), overruled on other grounds by Leatherman v. Tarrant County Narcotics Intel. & Coordination Unit, 507 U.S. 163, 164 (1993) (discussing the state-created danger doctrine in the context of a motion to dismiss).

The state actors may be found to have assisted through explicit approval of the conduct or by implicit communication, through repeated inaction, that the state actors condoned the private acts of violence.  See Okin, 557 F.3d at 428-29.

The plaintiffs argue that Stautberg-Moffett took things which Sargent believed were his and his alone and engaged in disorderly conduct, which the state condoned by not arresting her.  The court is unconvinced that this conduct could constitute the type of "private violence" which is at issue in the state-created danger cases cited.  See Okin, 557 F.3d at 419–427 (documenting extensive physical violence by husband on the victim); Pena v. DePrisco, 432 F.3d 98, 103-104 (claiming that the aggressor had killed three individuals in a drunk driving incident).  But even assuming that such behavior could give rise to a substantive due process violation if the police condoned it, the plaintiffs fail to offer any evidence that the officers intended to condone Stautberg-Moffett's behavior.

This case, wherein a woman who called the police to report alleged abuse by her husband was not, in turn, arrested herself when her husband claimed she had stolen his things, is not like the narrow line of cases which the Second Circuit has found that the government created the danger.  The first such case, Dwares, concerned explicit encouragement of skinheads to assault protesters.  See Dwares 985 F.2d at 96–97. The state actors in Pena ignored the fact that another officer was visibly intoxicated, and had never been reprimanded or disciplined for his regular practice of drinking on-duty, and thus the court allowed a claim that the defendants had condoned the inappropriate drinking while on- and off-duty to proceed.  See Pena, 432 F.3d at 103–104, 110–11.  In Okin, the officers had been called numerous times by a victim of domestic violence but,

instead of arresting her assailant, had discussed football with him and, on numerous occasions, did not file a domestic incident report or even interview her attacker, and therefore they could be held liable for the continued physical violence visited upon her by him.  See Okin, 577 F.3d 415 at 430.  These situations are markedly different from the facts here, even viewed in the light most favorable to the plaintiffs, where the person who called 911 in a domestic dispute was not herself arrested based on the allegations of her alleged attacker.  The plaintiffs offer no evidence upon which a reasonable jury could find that the officers intended to communicate to Stautberg-Moffett that she could harass her husband, only that the officers would take her allegations of domestic violence seriously.

Additionally, in order to establish a violation of a right to substantive due process, the plaintiff must also show that the state acts were "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  See Pena, 431 F.3d at 112.  In Pena, the court considered that the defendants had ample opportunity in the days, weeks, and months that preceded the accident to correct their course and reprimand, punish, or merely prevent the intoxicated officer from driving.  See id. at 114.  Here, the officers needed to determine the appropriate course of action quickly in response to a claim of domestic violence made by the putative victim.  The officers' actions, in taking allegations of domestic violence seriously, are not conscious-shocking.  Even where the allegations of domestic violence prove to be unfounded, there can be no claim that responding to allegations of domestic violence with the seriousness they deserve is egregious or outrageous.

The court also notes that Sargent's conclusory statement that the state had a "special relationship" akin to a prison inmate is nonsensical—a citizen subject to a protective order to avoid another individual is a not an individual whose life is under complete state control like those in prison.  See Westport MFSJ Opp. at 34 (citing Pena, 432 F.2d at 109; Matican v. City of New York, 524 F.3d 151, 155-56 (2d Cir. 2008)).  The "special relationship" only exists where "the State takes a person into its custody and holds him there against his will."  See DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 199-200 (1989).

Finally, the court notes again that, even if the court is mistaken, the officers are entitled to qualify immunity because their actions were objectively reasonable and did not clearly violate any established right.  The evidence which supports the court's decision on the merits of the claim provide greater support to the Westport defendants' claim of qualified immunity.

Because the plaintiffs have not come forward with sufficient evidence to create a genuine issue of material fact regarding any claim under the Due Process Clause, as well as the fact that the Second Amended Complaint includes no reference to the Due Process Clause, and, alternatively, because the Westport defendants are entitled to qualified immunity, the Westport Police defendants' Motion for Summary Judgment as to any claims regarding a violation of the plaintiffs' substantive due process rights is **GRANTED**.

### 4.    Unreasonable Search

The plaintiffs' Second Amended Complaint also fails to assert a claim that any defendant committed an unreasonable search See 2d Am. Compl.  However, again, as the parties have briefed the issue, the court will consider it.

The only event where the plaintiffs appear to believe the officers violated their Fourth Amendment right to be free from unreasonable searches is when Officer Kelley entered the home and bedroom while Sargent was sleeping on April 9, 2011. See Westport MFSJ Opp. at 16. Ultimately, this issue depends on whether Kelley had consent to enter the home by a person who he believed had authority to give it. See United States v. Moreno, 701 F.3d 64, 72 (2d Cir. 2012) ("[A] search conducted on the basis of consent is not an unreasonable search.").

Officer Kelley, through an Affidavit, has submitted that he received consent to enter from Stautberg-Moffett, who had authority to consent as a co-inhabitant. See Kelley Aff. (Doc. No. 220-6) ¶ 10. The plaintiffs attempt to refute this evidence by pointing to supposed inconsistencies between Kelley's interrogatories and his Affidavit. See Westport MFSJ Opp. at 18. They also argue that Stautberg-Moffett had no authority to consent to the officers entering into the bedroom. See id. at 19. Neither argument is persuasive.

In his interrogatory responses, Officer Kelley could not specifically recall that he was granted permission to enter the house, but he stated that his understanding from reading the police report indicated that he had been granted permission to enter the house and bedroom. See Pls.' Westport Rule 56(a)2 Stmt. ¶ 31. His Affidavit filed in conjunction with his Motion for Summary Judgment now states that he recalls being given permission to enter. See Kelley Aff. ¶ 10.[2] Sargent offers no evidence to rebut

---

[2] Generally, a party/witness is not permitted to offer an affidavit in opposition to a motion for summary judgment, which affidavit contradicts his prior deposition or testimony. See Moll v. Telesector Res. Grp., Inc., 760 F.3d 198, 205 (2d Cir. 2014). However, a failure to recall, at least as qualified by Officer Kelly, at a moment in time is not inconsistent with a recollection at another moment.

this but claims this alleged inconsistency between the interrogatory responses and his Affidavit renders Kelley's recollection untrustworthy. <u>See</u> Pls.' Westport Rule 56(a)2 Stmt. ¶ 31. These responses are not inconsistent, as both indicate that Kelley believed he had consent to enter, and thus do not create a genuine issue of fact. The plaintiffs offer no evidence whatsoever that could support a finding that Kelley did not receive consent to enter and as such, there is no evidence to support a finding that the officers violated the plaintiffs' right to be free from unreasonable searches and seizures.

The plaintiffs also argue, without citation, that "as a constitutional matter, [Stautberg-Moffett] lacked authority to consent to a search of the bedroom suite and the bedroom itself." <u>See</u> Westport MFSJ Opp. at 19. The plaintiffs state that Stautberg-Moffett and Sargent were inhabiting different parts of the house, and somehow this arrangement was apparent to the officers. Even if this speculation were true, the law does not support the plaintiffs' conclusion that this arrangement precludes Stautberg-Moffett's consent from allowing Kelley to enter the bedroom. <u>See</u> <u>United States v. Brothers</u>, 16-2634-cr, 2017 WL 1951975, at *3 (2d Cir. May 10, 2017) ("when two or more persons together occupy a home, 'the general rule is that one joint tenant can consent to a search of the dwelling place.'") (citing <u>United States v. Cataldo</u>, 433 F.2d 38, 40 (2d Cir. 1970)).

Further, the plaintiffs do not point to anything in the record which would suggest to Officer Kelley that Stautberg-Moffett did not have authority to permit the officers to enter the home and the bedroom, and as such, the officer is entitled to qualified immunity. <u>See</u> <u>Knight v. Cerejo</u>, No. 3:13-cv-1882(JAM), 2015 WL 893421, at *5 (D. Conn. Mar. 2, 2015) (finding that an officer is entitled to qualified immunity when a

plaintiff fails to offer evidence to show that no objectively reasonable officer would have believed he had been given consent from an appropriate source of that consent).

Because the plaintiffs have not come forward with sufficient evidence to create a genuine issue of material fact regarding any claim of unreasonable search, as well as the fact that the Second Amended Complaint includes no reference to a claim of an unreasonable search, and, alternatively, because Officer Kelly is entitled to qualified immunity, the Westport Police defendants' Motion for Summary Judgment as to any possible claim arising under the Fourth Amendment for the events of April 9, 2011, is **GRANTED**.

### 5. Failure to Report

Plaintiffs next claim that the officers failed to report abuse and neglect of the children plaintiffs by Stautberg-Moffett. <u>See</u> 2d Am. Compl. ¶ 43. The plaintiffs appear to be advancing this theory based on the events of May 16 and May 23, after Sargent had been excluded from the marital home. <u>See</u> Westport MFSJ Opp. at 36. The crux of the argument appears to be that the officers' appearance at the scene of an alleged robbery after a 911 call traumatized the children, and the police failed to report this "abuse" to DCF. <u>See id.</u> The plaintiffs have not offered sufficient evidence or law to create a genuine issue regarding their theory that a relatively uneventful police response to a reported robbery can amount to abuse or neglect of children by a parent. Similarly, the plaintiffs have not offered sufficient evidence to create a genuine issue as to whether the officers were required to report to DCF that they had responded to a robbery on the chance their presence at the scene of a reported crime had affected the children.

The Connecticut General Statutes provide that a mandated reporter must report if he has reasonable cause to suspect or believe that any child under the age of eighteen "has been abused or neglected, as described in section 46b-120." See Conn. Gen. Stat. §17a-101a(a)(1)(A). Section 46b-120 defines a neglected child as one who "is being denied proper care and attention, physically, educationally, emotionally or morally, or [ ] is being permitted to live under conditions, circumstances or associations injurious to the well-being of the child." Conn. Gen. Stat. § 46b-120(6). Similarly, an abused child is one who "has been inflicted with physical injury or injuries other than by accidental means, [ ] has injuries that are at variance with the history given of them, or [ ] is in a condition that is the result of maltreatment . . . ." See id. at (7).

The Sargent Affidavit contains no evidence that the police had reason to suspect or believe that the children were abused or neglected, as statutorily defined. See Sargent Aff. ¶¶ 219–239. Although the plaintiffs suggest that these reported robberies should have put the defendants on notice that Stautberg-Moffett was harming the children by exposing them to police too often, none of the facts suggest that the officers subjectively believed Stautberg-Moffett to be neglecting or abusing her children. The plaintiffs' theory, in essence, would mandate reporting any time a caretaker of a child calls the police. If the presence of police might traumatize the child and that trauma constitutes abuse or neglect, by calling the police the caretaker may be abusing or neglecting the child, which the police must then report. The law does not support such a theory and the court will not adopt it.

The plaintiffs may also be advancing a theory that the police failed to report that Stautberg-Moffett had mental illness, but offer no facts to support that she was abusing

or neglecting the children, other than by calling to report robberies.  See Sargent Aff. ¶¶ 219–239.  No reasonable jury could find on the evidence presented, and viewed in the light most favorable to the plaintiffs, that the officers violated state law by failing to report these incidents to DCF.

The Westport Police defendants' Motion for Summary Judgment as to failure to report abuse and neglect stemming from the May 16 and May 23 incidents is **GRANTED**.

### 6.    Municipal Liability

Finally, because the court has found that the plaintiffs have failed to direct the court to sufficient evidence for a jury to conclude that constitutional rights have been violated, the plaintiffs have no claim for supervisory liability against the Town.  See Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) ("Monell does not provide a separate cause of action for the failure by the government to train its employee; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.").

Because the court has granted summary judgment as to all claims against the Police defendants, the Westport Police defendants and the Town's Motion for Summary Judgment is **GRANTED** in its entirety.

### B.    The Lawyer Defendants

The Sherman defendants move for summary judgment as to the remaining claim of intentional infliction of emotional distress ("IIED") brought against them.  See Sherman Defs. Mem. of Law in Supp. of Mot. for Summ. J. ("Sherman MFSJ Mem.") (Doc. No. 221-1) at 1.  The Sherman defendants argue that they are protected by the

litigation privilege and that the plaintiffs do not have sufficient evidence to present a

genuine issue of fact regarding the IIED claim against them.  See id.  The Rutkin

defendants did not raise the litigation privilege.  However, because the litigation

privilege concerns a court's subject matter jurisdiction, the court must consider whether

it applies to the claims against all of the lawyer defendants.  See Stone v. Pattis, 144

Conn. App. 79, 96 (2013) ("The subject matter jurisdiction requirement may not be

waived by any party, and also may be raised by a party, or by the court sua sponte, at

any stage of the proceedings"); id. at 96–97 (comparing the litigation privilege to

sovereign immunity in determining that both implicate the subject matter jurisdiction of

the court); see also, Bruno v. Travelers Cos., 172 Conn. App. 717, 719 (2017) ("[W]e

conclude that the litigation privilege provides an absolute immunity from suit and, thus,

implicates the trial court's subject matter jurisdiction").  The plaintiffs' conclusion, without

citation, that the Rutkin defendants have waived this privilege is wrong.  See Pls.' Opp.

to Sherman Defendants Mot. for Summ. J. ("Sherman MFSJ Opp.") (Doc. No. 232) at

23.

As the question of litigation privilege is a question of subject matter jurisdiction,

"cognizance of it must be taken and the matter passed upon before [the court] can

move one further step in the cause; as any movement is necessarily the exercise of

jurisdiction."  Federal Deposit Ins. Corp. v. Peabody, N.E., Inc., 239 Conn. at 93, 99

(1996).  "It is black letter law in Connecticut that, 'there is an absolute privilege for

statements made in judicial proceedings.'"  Spector v. Bd. Of Trs. of Cmty.-Tech. Colls.,

463 F. Supp. 2d. 234, 255 (citing Petyan v. Ellis, 200 Conn. 243, 245 (1986)).  "It is well

settled that communications uttered or published in the course of judicial proceedings

are absolutely privileged so long as they are in some way pertinent to the subject of the controversy." Alexandru v. Strong, 81 Conn. App. 68, 83 (2004).   The privilege attaches absolutely to any communications made in the course of a judicial proceeding "so long as they are in some way pertinent to the subject of the controversy." Petyan, 200 Conn. at 245–46 (1986) (quoting Circus Circus Hotels, Inc. v. Witherspoon, 99 Nev. 56, 60 (1983)).

The litigation privilege exists to protect communication made in connection with judicial and quasi-judicial proceedings because, "in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements." MacDermid v. Leonetti, 310 Conn. 616, 627 (2013).  In those situations, safeguards other than civil liability provide sufficient deterrence to prevent attorney misconduct.  See Simms v. Seaman, 308 Conn. 523, 552–554 (2013) (discussing alternative safeguards, including bar grievance procedures and the authority of courts to regulate and sanction attorney misconduct).

"Connecticut case law makes clear that the litigation privilege is broad. . . ." Weldon v. MTAG Servs. LLC, 16-cv-783(JCH), 2017 WL 776648, at *10 (D. Conn. Feb. 28, 2017).  Connecticut courts have held that attorneys are protected by the litigation privilege against claims of IIED.  See DeLaurentis v. New Haven, 220 Conn. 225, 264 (1991) (holding that attorney statements made in pleadings or in court cannot independently be the basis for an action in IIED).

Here, the claims of litigation privilege concern the advice and actions of counsel to a putative victim of domestic violence and a party to a divorce, but largely the acts in issue were not uttered before a tribunal.  The plaintiffs' brief on the litigation privilege

discusses its application to the Rutkin defendants' actions. <u>See</u> <u>Sherman MFSJ Opp.</u> at 30 (discussing the Rutkin defendants' efforts to have Stautberg-Moffett transfer funds and intermediate transfers of Sargent's mail). The court is aware of a state case whose facts have much in common with this: there was an allegation of divorce-by-911 and claims against divorce counsel stemmed therefrom. <u>See</u> <u>Gordon v. Perlmutter</u>, CV145034851S, 2015 WL 5626188 (Conn. Sup. Ct. Aug. 19, 2015). There, the Connecticut Superior Court held that the claims against the attorney were barred by the litigation privilege. <u>See</u> <u>id.</u> Thus, there appears to be some question regarding whether the litigation privilege should bar the plaintiffs' claims against the lawyer defendants.

Having determined that the plaintiffs' federal claims cannot survive the Westport defendant's Motion for Summary Judgment, the court is confronted with whether to maintain supplemental jurisdiction over the plaintiffs' state law claims against the lawyer defendants. <u>See</u> 28 U.S.C. § 1367(c)(3) (providing that a district court may decline to exercise supplemental jurisdiction where the district court has dismissed all claims over which it has original jurisdiction). Similarly, the district courts may decline to exercise if it determines that the claim raises a novel or complex issue of State law. <u>See</u> <u>id.</u> at (c)(1). "[A]s a general proposition, . . . if all federal claims are dismissed before trial . . ., the state claims should be dismissed as well." <u>See</u> <u>Motorola Credit Corp. v. Uzan</u>, 388 F.3d 39, 56 (2d Cir. 2004). The decision whether or not to exercise supplemental jurisdiction "is left to the discretion of the district court." <u>See</u> <u>Purgess v. Sharrock</u>, 33 F.3d 134, 138 (2d Cir. 1994).

Having determined that both sections 1367(c)(1) and (3) are satisfied, the court declines to exercise supplemental jurisdiction over the claims against the lawyer

defendants.  See Palmieri v. Lynch, 392 F.3d 73 (2d Cir. 2004) (affirming a grant of summary judgment on the federal claim and refusal to exercise supplemental jurisdiction on the state-law claim).

## V.    CONCLUSION

Based on the foregoing, the Westport Police defendants and the Town's Motion for Summary Judgment (Doc. No. 220) is **GRANTED**.  The court declines to exercise supplemental jurisdiction over the claims against the lawyer defendants.  Therefore, their Motions for Summary Judgment (Doc. Nos. 221, 222) are **TERMINATED AS MOOT**.  Because no claims remain, the Clerk is directed to close this matter.

**SO ORDERED**.

Dated at New Haven, Connecticut, this 19th of September, 2017.


/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge